UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND EARL BOYD,

        Plaintiff,                                      Case. No. 2:21-cv-11926

v.                                                   Hon. Nancy G. Edmunds

GARY MINIARD, WARDEN, et al.,

        Defendants.
_____/

**OPINION AND ORDER OF PARTIAL SUMMARY DISMISSAL**

Plaintiff Raymond Earl Boyd, currently confined at the Saginaw Correctional Facility in Freeland, Michigan, filed this *pro se* civil rights complaint against eleven Michigan Department of Corrections employees in their official and individual capacities. He has paid the filing fee for this action in full. Plaintiff alleges Defendants were deliberately indifferent in violation of the Eighth Amendment when they moved him to quarantine housing with several dozen prisoners who had tested positive for the COVID-19 virus, despite his recent negative test result and numerous risk factors for COVID.

As explained below, the Court will dismiss Defendants Miniard, Walker, Pratt, Anderson, McCauley, and Doe for failure to state a claim. Plaintiff's lawsuit may otherwise proceed.

### I.    BACKGROUND

Plaintiff Boyd is 73 years old, suffers from hypertension, and is African American, all of which increase his vulnerability to the COVID-19 virus. He alleges prison staff at Saginaw Correctional Facility sent him to a quarantine setting which housed COVID-positive prisoners over his protests that he was COVID-negative, and that he contracted

the virus as a result of the move. He has sued five corrections officers, Laird, Nyquist, Klapish, Henderson, and Schott; four administrative staff members, Acting Warden Gary Miniard, Acting Deputy Warden Carol Walker, Resident Unit Manager/Acting Assistant Deputy Warden of Housing J. Anderson, and Grievance Coordinator A. Pratt; and two members of the health care staff, Health Unit Manager Sue McCauley and Nurse Jane Doe. He alleges that Defendants were deliberately indifferent to his vulnerability to the COVID-19 virus.

Plaintiff received a negative test result on December 18, 2020, the day he was sent to Building 300, the quarantine unit. (*Id*. at PageID.9, 32.) Plaintiff told the corrections officers who sent him to Building 300, Laird and Nyquist, and those who received him once he arrived at quarantine, Klapish, Henderson, and Schott, that he had tested negative for the virus. (Compl., ECF No. 1, PageID.9.) Nonetheless, he was forced to move to the quarantine facility and remain there for three days. Plaintiff observes that as a prisoner, he was at risk of disciplinary action for disobeying a direct order had he refused to move. (*Id*. at PageID.62.)

The quarantine unit at Building 300 was set up with bunks spaced only three feet apart. (Compl., ECF No. 1, PageID.12.) Plaintiff reports that 78 prisoners in the quarantine facility were infected with COVID-19 and experiencing symptoms. (*Id*. at PageID.9.)

Defendant Nurse Jane Doe saw Plaintiff on December 21, 2020. (*Id*. at PageID.9.) She informed Plaintiff that the medical staff had not sent him to quarantine, rather, that the "Control Center" had. (*Id*. at PageID.9, 62.) She tested him for COVID.

On December 21, 2020, Plaintiff returned from Building 300 to his prior placement, Building 800-Veterans Unit. (*Id*. at PageID.10, 121.) Plaintiff received a positive test result

2

in December 23. (*Id*. at PageID.34.) Starting December 23, for three days, Plaintiff experienced COVID symptoms which caused him "physical and emotional pain and distress." (*Id*. at PageID.10, 17, 122.)

Plaintiff was previously exposed to COVID in March 2020, when a counselor contracted the virus. (*Id*. at PageID.10.) Plaintiff and another prisoner who had been in close contact with the counselor were sent to segregation/quarantine for 17 days. (*Id*.) In November and December 2020, Saginaw Correctional Facility also operated a "close contact" unit, Building 700, for the isolation of prisoners who had been exposed to but tested negative for COVID-19. (*Id*. at PageID.11.) Plaintiff observes these facts indicate Defendants knew how to treat COVID-negative prisoners appropriately to avoid contagion. (*Id*. at PageID.12.)

Plaintiff alleges Defendants Miniard, Walker, and Anderson failed to instruct staff on moving and separating COVID-negative from COVID-positive prisoners, despite being aware of appropriate procedures to handle the pandemic. (*Id.* at PageID.16.) He alleges those defendants and Defendant Pratt submitted Plaintiff to an unreasonable risk to his health by having him placed in Building 300. (*Id*. at PageID.17.) Finally, Plaintiff asserts Defendants McCauley and Nurse Doe knew of Plaintiff's vulnerabilities and negative test status, but permitted him to be placed in the COVID-positive environment. (*Id*. at PageID.16.)

## II.   LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA"), the court is required to dismiss a prisoner's complaint if it determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune

from such relief. *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010) (citing 28 U.S.C. §§ 1915(e), 1915A(b); 42 U.S.C. § 1997e(c)). The screening requirement extends to all prisoner civil cases, whether fee-paid or *in forma pauperis*, "as the statute does not differentiate between civil actions brought by prisoners." *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997).

A complaint is frivolous and subject to *sua sponte* dismissal under § 1915(e) if it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To determine whether a plaintiff has failed to state a claim, a court must "construe his complaint in the light most favorable to him, accept his factual allegations as true, and determine whether he can prove any set of facts that would entitle him to relief." *Wershe v. Combs*, 763 F.3d 500, 505 (6th Cir. 2014) (quoting *Harbin–Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here

4

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

A *pro se* civil rights complaint is to be construed liberally. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such complaints "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court must accept a plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Consistent with *Twombly* and *Iqbal*, the Sixth Circuit has observed that "[d]espite the leniency afforded to . . . *pro se* litigant[s], however, our standard of review requires more than the bare assertion of legal conclusions, and thus the complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). Neither the Supreme Court nor other courts "have been willing to abrogate basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Haines*, 404 U.S. at 521) (other citations omitted).

To state a civil rights claim under 42 U.S.C. § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the

5

Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (citation omitted). A plaintiff must allege "more than just mere negligence." *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000) (citing *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)) (other citation omitted). In addition, the plaintiff must allege that "the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citing *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### III. DISCUSSION

#### A. Administrative Defendants

Plaintiff fails to state a claim upon which relief may be granted against Defendants Miniard, Walker, Anderson, and Pratt. Plaintiff alleges these defendants failed to instruct facility staff in appropriate prisoner moves, specifically to keep COVID-positive and negative prisoners separated, and permitted him to be exposed to COVID despite serious risks to his health. (*Id*. at PageID.16, 17.)

"For individual liability on a failure-to-train or supervise theory, the defendant supervisor must be found to have 'encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Essex v. Cty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013) (citing *Phillips v. Roane Cnty*., 534 F.3d 531, 543 (6th Cir. 2008)) (internal quotation marks omitted). At a minimum a plaintiff must show that the official "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional

6

conduct of the offending officers.'" *Id*. (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)) (internal quotation marks omitted).

Plaintiff does not allege any participation in or encouragement by the administrative defendants for his move to quarantine in Building 300; nor does he suggest any of them authorized or even acquiesced to the move. Accordingly, Plaintiff has failed to state a claim against these defendants upon which relief may be granted, and they will be dismissed.

### B. Healthcare Unit Defendants

Plaintiff next asserts Defendants Healthcare Unit Manager McCauley and Nurse Doe were deliberately indifferent in permitting him to be placed in the COVID-positive environment at Building 300. (Id. at PageID.16.) However, Plaintiff's allegations do not establish either of these defendants participated in unconstitutional behavior. He provides no allegations to support his contention that McCauley and Doe were aware of his personal vulnerabilities, his COVID-negative status, or that he was sent to Building 300 on December 18, 2020, despite his negative status.

Plaintiff alleges that Nurse Doe did not see him until December 21, his last day in Building 300, and that she tested him for COVID-19. He also reports that Doe denied the healthcare unit was responsible for sending Plaintiff to the quarantine unit, and Plaintiff does not suggest her assertion was untrue. These actions by Doe are not unconstitutional conduct.

Plaintiff makes no conduct-related allegations against Defendant McCauley. Accordingly, Plaintiff has failed to allege either defendant had any personal involvement

7

in the alleged deprivation of his civil rights. *Iqbal*, 556 U.S. at 676; *Frazier*, 41 F. App'x at 764. Defendants McCauley and Doe will be dismissed.

### C. Defendant Corrections Officers

Claims against the defendant corrections officers may proceed on the issue of deliberate indifference to Plaintiff's serious medical needs. Deliberate indifference "has two components, one objective and one subjective." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001), *cert. denied*, 537 U.S. 817 (2002)). The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 550 (6th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The Sixth Circuit recently held that in the context of the COVID-19 pandemic, "the objective prong is easily satisfied[,]" because the "COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death." *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020).

Establishing the second, subjective, component "requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Dominguez*, 555 F.3d at 550 (quoting *Comstock*, 273 F.3d at 703). "Mere negligence or malpractice is insufficient to establish an Eighth Amendment violation." *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (citing *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 544 (6th Cir. 2003)).

Here, Plaintiff told the corrections officers that he had just received a negative result on a test for the COVID-19 virus. Nonetheless, all the officers disregarded Plaintiff's

8

protests, and placed him or kept him in a setting with close contact to dozens of COVID-positive prisoners.

In *Amick v. Ohio Dep't of Rehab. & Correction*, 521 F. App'x 354, 363 (6th Cir. 2013), the Sixth Circuit held that allegations a prisoner had made "a plea for help" to corrections officers was sufficient to establish a plausible case for deliberate indifference, even if development of the facts might ultimately establish defendants were only negligent. Similarly, Plaintiff's allegations here establish a plausible cause of action for these defendants' awareness and disregard of the serious risk of a COVID-negative individual contracting the virus when housed with numerous COVID-positive prisoners.

## IV. ORDER

For the reasons stated above, the complaint is SUMMARILY DISMISSED with respect to Defendants Miniard, Walker, Anderson, Pratt, McCauley, and Doe. 28 U.S.C. §§ 1915(e)(2), 1915A(b).

Plaintiff's claims against the remaining Defendants are not subject to summary dismissal and may proceed.

**SO ORDERED**.

s/ Nancy G. Edmunds
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated: September 16, 2021