UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND EARL BOYD,

     Plaintiff,                               Case No. 2:21-cv-11926
                                                District Judge Nancy G. Edmunds
v.                                     Magistrate Judge Kimberly G. Altman

EDWARD NYQUIST, CHRISTOPHER
LAIRD, JOHN KLAPISH, WILLIAM
HENDERSON, and ALLAN SCHOTT,

     Defendants.

_____/

## REPORT AND RECOMMENDATION
## TO GRANT IN PART AND DENY IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 16)[1]

I.     Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff

Raymond Earl Boyd (Boyd), proceeding *pro se*, is suing Defendants, Edward

Nyquist (Nyquist), Christopher Laird (Laird), John Klapish (Klapish), William

Henderson (Henderson), and Allan Schott (Schott), who are all corrections officers

employed by the Michigan Department of Corrections (MDOC). Boyd claims that

Defendants were deliberately indifferent in violation of the Eighth Amendment

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

when they moved him to quarantine housing with several dozen prisoners who had

tested positive for the COVID-19 virus, despite his recent negative test result and

numerous risk factors for the virus.[2]  *See* ECF No. 1.  Under 28 U.S.C. § 636(b)(1),

all pretrial matters have been referred to the undersigned.  (ECF No. 12).

Before the Court is Defendants' motion for summary judgment on the

grounds that Boyd has failed to exhaust his administrative remedies (ECF No. 16).

The motion is fully briefed, (ECF Nos. 22, 24, 25, 31).  For the reasons that follow,

the undersigned RECOMMENDS that the motion be GRANTED IN PART and

DENIED IN PART.  In particular, Henderson and Schott should be DISMISSED

WITHOUT PREJUDICE and the case should proceed against Nyquist, Laird, and

Klapish.

## II.    Background

### A.    Placement in Quarantine Housing

The district court summarized the facts of this case in its opinion and order

of partial summary dismissal, as follows:

> Plaintiff Boyd is 73 years old, suffers from hypertension, and is
> African American, all of which increase his vulnerability to the
> COVID-19 virus.  He alleges prison staff at Saginaw Correctional
> Facility sent him to a quarantine setting which housed COVID-
> positive prisoners over his protests that he was COVID-negative, and
> that he contracted the virus as a result of the move.  He has sued five

---

[2] Boyd also named Gary Miniard, Carol Walker, McCauley, A. Pratt, J. Anderson,
and a Jane Doe as Defendants.  *See* ECF No. 1.  However, the district court
dismissed these Defendants after screening the complaint.  *See* ECF No. 5.

corrections officers, Laird, Nyquist, Klapish, Henderson, and Schott; four administrative staff members, Acting Warden Gary Miniard, Acting Deputy Warden Carol Walker, Resident Unit Manager/Acting Assistant Deputy Warden of Housing J. Anderson, and Grievance Coordinator A. Pratt; and two members of the health care staff, Health Unit Manager Sue McCauley and Nurse Jane Doe. He alleges that Defendants were deliberately indifferent to his vulnerability to the COVID-19 virus.

[Boyd] received a negative test result on December 18, 2020, the day he was sent to Building 300, the quarantine unit. [Boyd] told the corrections officers who sent him to Building 300, Laird and Nyquist, and those who received him once he arrived at quarantine, Klapish, Henderson, and Schott, that he had tested negative for the virus. Nonetheless, he was forced to move to the quarantine facility and remain there for three days. [Boyd] observes that as a prisoner, he was at risk of disciplinary action for disobeying a direct order had he refused to move.

The quarantine unit at Building 300 was set up with bunks spaced only three feet apart. [Boyd] reports that 78 prisoners in the quarantine facility were infected with COVID-19 and experiencing symptoms.

Defendant Nurse Jane Doe saw [Boyd] on December 21, 2020. She informed [Boyd] that the medical staff had not sent him to quarantine, rather, that the "Control Center" had. She tested him for COVID.

On December 21, 2020, [Boyd] returned from Building 300 to his prior placement, Building 800-Veterans Unit. [Boyd] received a positive test result [on] December 23. Starting December 23, for three days, [Boyd] experienced COVID symptoms which caused him "physical and emotional pain and distress."

[Boyd] was previously exposed to COVID in March 2020, when a counselor contracted the virus. [Boyd] and another prisoner who had been in close contact with the counselor were sent to segregation/quarantine for 17 days. In November and December 2020, Saginaw Correctional Facility also operated a "close contact"

3

unit, Building 700, for the isolation of prisoners who had been exposed to but tested negative for COVID-19.  [Boyd] observes these facts indicate Defendants knew how to treat COVID-negative prisoners appropriately to avoid contagion.

[Boyd] alleges Defendants Miniard, Walker, and Anderson failed to instruct staff on moving and separating COVID-negative from COVID-positive prisoners, despite being aware of appropriate procedures to handle the pandemic.  He alleges those defendants and Defendant Pratt submitted [Boyd] to an unreasonable risk to his health by having him placed in Building 300.  Finally, [Boyd] asserts Defendants McCauley and Nurse Doe knew of [Boyd's] vulnerabilities and negative test status, but permitted him to be placed in the COVID-positive environment.

(ECF No. 5, PageID.131-133) (internal citations to the record omitted).

## B.    Grievance Process

On December 28, 2020, Boyd filed a Step I grievance (SRF 2020-12-0974-277) concerning his placement in the quarantine unit.  He wrote:

In March of 2020 I spent 17 days in segregation on virus quarantine for close contact with one of my bosses, but on each day tested, I was found negative for the virus.  Since that time, I've been tested negative for the virus up to and including 12/16/2020.  Yet at 8:30 pm on 12/18/20, Officers (Laird and Nyquist) ordered me to pack-up for move to 300 bldg. for virus quarantine.  On 12/21/2020 Officer Klapish called me to see the nurse.  She asked why I was there under quarantine.  I said that Officers (Laird and Nyquist) said Health Care has quarantined me.  She said, "No, Control Center quarantined me." She then did a nose swab on me and said that she would send it in with the other swabs taken that day.  An hour later Officer Klapish told me to pack-up that I was being returned to 800 unit, from whence I had come.  The fact that I am "73" and am African American makes me more susceptible to the virus then the average population. Therefore, mistake or not, the person(s) responsible for sending me into that dangerous environment that included 79 other men who tested positive put me at risk and should serve time off without pay, to

4

insure [sic] that that never happen[s] again to anyone else.   90+
prisoners have <u>already died from that virus</u>; don't want to be the
next!!

(ECF No. 16-3, PageID.212) (underlining in original).  On December 29, 2020,

Boyd's Step I grievance was rejected for "vagueness."  (*Id.*).  The reviewer

explained in the rejection that Boyd "ha[d] not stated a policy or procedure

violation" as required by Policy Directive (PD) 03.02.130.[3]  (*Id.*).

On January 11, 2021, Boyd filed a Step II appeal.  He wrote:

Policy Directive 03.03.130 [s]tates in part: "All prisoners . . . shall be
treated humanely . . . in matters of health care, personal safety . . .".
The 8th Amendment of the Constitution agrees in that it prohibits, ". .
. cruel and unusual punishment inflicted."    Putting me in an
environment filled with COVED 19 [sic] Virus' positively infected
people, when I was shown to have tested "negative" was tantamount
to playing Russian Roulette with my life.  I do not view this as being a
vague complaint.  Initially I did not have the test results to send in
with the grievance, but I have just received that information and am
including it with this second step form.  The fact that I subsequently
tested positive and experienced chills as a result shows that, ". . .
mistake or not . . .," the parties involved should be disciplined and
trained to ensure this [does] not happen to anyone else in the future.

(*Id.*, PageID.211).  On January 25, 2021, Acting Warden Gary Miniard denied

Boyd's Step II appeal, simply stating, "Step I Rejection upheld."  (*Id.*).

Finally, on January 28, 2021, Boyd filed a Step III appeal.  He wrote:

I was not being treated humanely when I was sent to a quarantine unit

---

[3] PD 03.02.130 states, in relevant part, that "[g]rievances may be submitted
regarding alleged violations of policy or procedure or unsatisfactory conditions of
confinement that personally affect the grievant, including alleged violations of this
policy and related procedures."  (ECF No. 16-2, PageID.199).

that housed, at that time, 78 people who tested positive for the COVID
19 virus while I tested "negative" for the virus.  I was placed in
jeopardy of my life when placed in that unit, especially considering
that I am 73½ years old and am African American.  You are saying
that PD. 03.03.130 doesn't apply to me?!  My [s]on and siblings are
aware of what transpired.  I expect no retaliation for filing this.

(*Id*.).  On April 21, 2021, Boyd was sent a Step III grievance decision which stated,

"**THE REJECTION IS UPHELD.**"  (*Id*., PageID.210).

On August 10, 2021, a few months after receiving the Step III grievance

decision, Boyd filed the instant lawsuit.  (ECF No. 1).

### III.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views

the evidence, all facts, and any inferences that may be drawn from the facts in the

light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley

Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Boyd is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under [*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-513 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

IV.    Analysis

Defendants' sole basis for requesting summary judgment is Boyd's alleged failure to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA) before filing this lawsuit.

A.    Standard

The PLRA requires prisoners to "properly" exhaust all "available"

7

administrative remedies prior to filing a lawsuit challenging prison conditions. 42

U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper

exhaustion of administrative remedies "means using all steps that the agency holds

out, and doing so *properly* (so that the agency addresses the issues on the merits)."

*Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and

citations omitted). Requiring exhaustion allows prison officials an opportunity to

resolve disputes concerning the exercise of their responsibilities before being haled

into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S.

199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails

because "it is the prison's requirements, and not the PLRA, that define the

boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which

the defendant has the burden to plead and prove by a preponderance of the

evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner

countering a motion alleging failure to exhaust "must offer competent and specific

evidence showing that he indeed exhausted his remedies, or was otherwise excused

from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D.

Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969

(E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to

exhaust administrative remedies is not on the merits and thus requires dismissal

without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC PD 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC

9

PD 03.02.130 ¶ S (underscoring omitted).

Furthermore, MDOC PD also 03.02.130 sets forth time limits regarding the

three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue
> within two business days of becoming aware of the issue, and then
> may file a Step I grievance about any unresolved issues with a
> grievance coordinator within five business days of the attempted
> informal resolution. (*Id*. at ¶¶ Q, W.) If the inmate is dissatisfied
> with the Step I response, or does not receive a timely response, he
> may appeal to Step II by obtaining an appeal form within ten business
> days of the response, or if no response was received, within ten days
> after the response was due. (*Id*. at ¶¶ U, DD.) If the inmate is still
> dissatisfied with the Step II response, or does not receive a timely
> Step II response, he may appeal to Step III using the same procedure.
> (*Id*. at ¶¶ U, HH.) The Step III form shall be sent within ten business
> days after receiving the Step II response, or if no Step II response was
> received, within ten business days after the date the Step II response
> was due. (*Id*.)

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July

18, 2022). "Step III grievances are 'generally' responded to within sixty (60)

days." *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3476449, at *3 (W.D. Mich.

June 14, 2021), *report and recommendation adopted*, 2021 WL 3473483 (W.D.

Mich. Aug. 6, 2021) (citing MDOC PD 03.02.130 ¶ II). "The grievance process is

exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-

12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

B.    Application

1.    Henderson and Schott

Henderson and Schott both argue that they are entitled to summary judgment because Boyd failed to name them in his Step I grievance.  Boyd, in turn, argues that he did not know Henderson and Schott's names when he filed his grievance.[4]

As previously stated, MDOC PD 03.02.130 ¶ S requires a prisoner to include the "names of all those involved in the issue being grieved."  Additionally, the Sixth Circuit has "explained that a prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief."  *Mattox v. Edelman*, 851 F.3d 583, 590-591 (6th Cir. 2017).[5]  Accordingly, Henderson and Schott are entitled to summary judgment because Boyd did not name them in his Step I grievance and thus failed to exhaust his

---

[4] Boyd also argues that the grievance process was not fully available to him because of COVID-19 restrictions that were in effect during the relevant period. Such restrictions prevented Boyd from accessing the law library to reference relevant MDOC policies and procedures as well as caselaw and statutes.  However, Boyd's lack of library access did not impact his ability to name Henderson and Schott in his grievance.  Furthermore, as will be later explained, the undersigned finds that the other three Defendants failed to establish their entitlement to summary judgment, meaning the COVID-19 restrictions did not impact Boyd in this matter.

[5] Although *Mattox* addressed an earlier version of PD 03.02.130, it involved the interpretation of language that is identical in both the rescinded and current versions of the policy directive.

administrative remedies against them.

### 2.   Nyquist, Laird, and Klapish

Nyquist, Laird, and Klapish also argue that they are entitled to summary judgment because Boyd failed to exhaust his administrative remedies against them. In particular, Nyquist and Laird argue that Boyd failed to "adequately contest the rejection" of his grievance at either Step II or Step III.  (ECF No. 16, PageID.192). They further state that "[a]t Step II, Boyd merely voiced his disagreement with the rejection but did not explain how his Step I grievance alleged a violation of policy by Laird or Nyquist.  Then, at Step III, Boyd did not contest the rejection in any way."  (*Id*.) (internal record citations omitted).  Meanwhile Klapish argues that the grievance "alleged only that Klapish called [Boyd] to see the nurse and later told him to return to his previous housing unit, and did not make any allegations to suggest any wrongdoing by Klapish."  (*Id*., PageID.194).

In response, Boyd argues that he named Nyquist and Laird in his Step I grievance and explained the situation he was complaining about.  (ECF No. 22, PageID.245).  Boyd further argues that he quoted the relevant language of PD 03.03.130 in his Step II appeal and also quoted the Eighth Amendment.  (*Id*.). Finally, he argues that in his Step III appeal he again complained that Defendants had violated PD 03.03.130.  (*Id*., PageID.247).  He also notes that at this stage of litigation, "it cannot be determined what efforts [Klapish] may or may not have

[taken that] affected [Boyd's] release from quarantine." (*Id*., PageID.250).

The undersigned finds Nyquist, Laird, and Klapish's arguments unpersuasive for two reasons: (1) they overstate the amount of detail that a grievant must include in his grievance and (2) they mischaracterize Boyd's Step II and Step III responses.

The Sixth Circuit has long held that a Step I grievance is sufficient when it gives a prison official fair notice of a prisoner's allegations. For instance, in *Burton*, the Sixth Circuit found proper exhaustion after determining that "a prisoner's Step I problem statement gave prison officials *fair notice* of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." 321 F.3d at 575 (emphasis added). Moreover, "[s]ince [2007 when] the Supreme Court decided *Jones v. Bock*, the Sixth Circuit has stated that courts ought not impose severe technical requirements on prisoners who comply with the spirit and purpose of the administrative exhaustion rules." *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 786 (E.D. Mich. 2016).

A reasonable reading of Boyd's Step I grievance demonstrates that Nyquist, Laird, and Klapish had fair notice of the allegations that now form the basis of this lawsuit. Boyd named each of them in his Step I grievance and also explained that he was filing the grievance because he disagreed with his placement in quarantine

housing considering the fact that he had recently tested negative for COVID-19.

He further explained that Nyquist and Laird were the prison officials who escorted

him to quarantine housing and that Klapish was one of the prison officials who

interacted with Boyd while he was placed in quarantine housing.  *See* ECF No. 16-

3, PageID.212.

The undersigned also rejects Nyquist, Laird, and Klapish's

mischaracterizations of Boyd's Step II and Step III appeals.  In both appeals, Boyd

cites the relevant policy—PD 03.03.130—and in his Step II appeal he explained

that his grievance fell under the policy directive's requirement that "[a]ll prisoners

committed to the jurisdiction of the Department shall be treated humanely and with

dignity in matters of health care, personal safety and general living conditions."

PD 03.03.130.  He also cites the Eighth Amendment in his Step II appeal, which is

the constitutional amendment under which he now bases his claims.  *See* ECF No.

16-3, PageID.211.  Moreover, the undersigned agrees with Boyd's statement in his

response brief that—at this early stage of ligation—"it cannot be determined what

efforts [Klapish] may or may not have [taken that] affected [Boyd's] release from

quarantine."  (ECF No. 22, PageID.250).

In sum, the undersigned recommends that Nyquist, Laird, and Klapish's

motion for summary judgment be denied because they have not met their burden to

show that they are entitled to summary judgment as a matter of law based on a

failure to exhaust.  The record, in fact, shows that Boyd properly exhausted his

claims against Nyquist, Laird, and Klapish under the PLRA and the MDOC's

grievance procedure.

## V.     Conclusion

For the reasons stated above, the undersigned RECOMMENDS that

Defendants' motion for summary judgment, (ECF No. 16), be GRANTED IN

PART and DENIED IN PART.  Specifically, Henderson and Schott should be

DISMISSED WITHOUT PREJUDICE and the case should proceed against

Nyquist, Laird, and Klapish.


Dated: September 29, 2022            s/Kimberly G. Altman
Detroit, Michigan                    KIMBERLY G. ALTMAN
                                     United States Magistrate Judge


## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 4, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager