UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND EARL BOYD,

      Plaintiff,                        Case No. 2:21-cv-11926
                                        District Judge Nancy G. Edmunds
v.                                   Magistrate Judge Kimberly G. Altman

EDWARD NYQUIST, CHRISTOPHER
LAIRD, and JOHN KLAPISH,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**
**TO DENY DEFENDANTS' MOTION TO DISMISS (ECF No. 46)**[1]

I.      Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff

Raymond Earl Boyd (Boyd), proceeding *pro se*, is suing defendants Edward

Nyquist (Nyquist), Christopher Laird (Laird), and John Klapish (Klapish),[2] who

are all corrections officers employed by the Michigan Department of Corrections

(MDOC).  Boyd claims that defendants were deliberately indifferent in violation of

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate
for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR
7.1(f)(1).

[2] Boyd named other defendants in his complaint as well, but they have all since
been dismissed.

1

the Eighth Amendment when they moved him to quarantine housing with several dozen prisoners who had tested positive for the COVID-19 virus, despite his recent negative test result and numerous risk factors for the virus.  *See* ECF No. 1.  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 12).

Before the Court is defendants' joint motion to dismiss.  (ECF No. 46).  The motion is fully briefed, (ECF Nos. 51, 54, 59, 60), and ready for consideration. For the reasons that follow, the undersigned RECOMMENDS that the motion be DENIED.

## II.    Background

The district court summarized the facts of this case in its opinion and order of partial summary dismissal:

> Plaintiff Boyd is 73 years old, suffers from hypertension, and is African American, all of which increase his vulnerability to the COVID-19 virus.  He alleges prison staff at Saginaw Correctional Facility sent him to a quarantine setting which housed COVID-positive prisoners over his protests that he was COVID-negative, and that he contracted the virus as a result of the move.  He has sued five corrections officers, Laird, Nyquist, Klapish, Henderson, and Schott; four administrative staff members, Acting Warden Gary Miniard, Acting Deputy Warden Carol Walker, Resident Unit Manager/Acting Assistant Deputy Warden of Housing J. Anderson, and Grievance Coordinator A. Pratt; and two members of the health care staff, Health Unit Manager Sue McCauley and Nurse Jane Doe.  He alleges that [d]efendants were deliberately indifferent to his vulnerability to the COVID-19 virus.
>
> [Boyd] received a negative test result on December 18, 2020, the day he was sent to Building 300, the quarantine unit.  [Boyd] told the

corrections officers who sent him to Building 300, Laird and Nyquist, and those who received him once he arrived at quarantine, Klapish, Henderson, and Schott, that he had tested negative for the virus. Nonetheless, he was forced to move to the quarantine facility and remain there for three days.  [Boyd] observes that as a prisoner, he was at risk of disciplinary action for disobeying a direct order had he refused to move.

The quarantine unit at Building 300 was set up with bunks spaced only three feet apart.  [Boyd] reports that 78 prisoners in the quarantine facility were infected with COVID-19 and experiencing symptoms.

Defendant Nurse Jane Doe saw [Boyd] on December 21, 2020.  She informed [Boyd] that the medical staff had not sent him to quarantine, rather, that the "Control Center" had.  She tested him for COVID.

On December 21, 2020, [Boyd] returned from Building 300 to his prior placement, Building 800-Veterans Unit.  [Boyd] received a positive test result [on] December 23.  Starting December 23, for three days, [Boyd] experienced COVID symptoms which caused him "physical and emotional pain and distress."

[Boyd] was previously exposed to COVID in March 2020, when a counselor contracted the virus.  [Boyd] and another prisoner who had been in close contact with the counselor were sent to segregation/ quarantine for 17 days.  In November and December 2020, Saginaw Correctional Facility also operated a "close contact" unit, Building 700, for the isolation of prisoners who had been exposed to but tested negative for COVID-19.   [Boyd] observes these facts indicate [d]efendants knew how to treat COVID-negative prisoners appropriately to avoid contagion.

(ECF No. 5, PageID.131-133 (internal record citations omitted)).

### III.    Motion to Dismiss Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

### IV.    Discussion

### A.    Overview

Boyd's deliberate indifference claims arise out of the events that led him to

contract COVID-19 in December 2020.[3]  These types of claims have become

common following the onset of the COVID-19 pandemic in March 2020, and have

been the subject of numerous Sixth Circuit and district court opinions.

Here, defendants argue that they are entitled to qualified immunity because

Boyd is unable to satisfy either prong of the qualified immunity test, which

requires a plaintiff to establish that (1) the defendant violated a constitutional right

---

[3] Defendants also move for the dismissal of Boyd's claims against them in their
official capacities on the ground of absolute immunity under the Eleventh
Amendment.  "[O]fficial-capacity suits generally represent only another way of
pleading an action against an entity of which an officer is an agent."  *Hafer v.
Melo*, 502 U.S. 21, 25 (1991); *see also Day v. DeLong*, 358 F. Supp. 687, 704
(S.D. Ohio 2019) ("Claims under 42 U.S.C. § 1983 are, in all respects other than
name, claims against the entity, not against individuals in their official capacity.").
However, as Boyd explained in his response and sur-reply, he did not intend to
assert any claims against these defendants in their official capacities.  Accordingly,
the undersigned declines to address defendants' arguments on this issue as it
appears that there are no official capacity claims asserted against these defendants.

and (2) the constitutional right was clearly established at the time of the alleged violation. The constitutional right at issue here is the Eighth Amendment's prohibition against treating a prisoner's serious medical need with deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must establish both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Defendants concede that Boyd has established the objective competent but argue that he has failed to establish the subjective component. The undersigned disagrees.

In support of their argument, defendants heavily rely on the Sixth Circuit's decision in a habeas corpus action brought by a class of federal prisoners "alleg[ing] that their confinement in the midst of the COVID-19 outbreak violate[d] the Eighth Amendment." *Wilson v. Williams*, 961 F.3d 829, 835 (6th Cir. 2020). The prisoners there specifically "claim[ed] that there [was] no set of internal protocols or practices that, in light of the current conditions and population levels, Elkton [could] use that [would] prevent further disease and death inside the prison." *Id*. (internal quotation marks omitted). As will be discussed below, *Wilson* is distinguishable from this case, and does not compel this Court to grant defendants' motion to dismiss. Defendants' other arguments are similarly unpersuasive. Thus, dismissal will not be recommended.

B.     Qualified Immunity

1.     Legal Standard

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Created to protect government officials from interference with their official duties, qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified).

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

When a defendant raises the defense of qualified immunity, the "plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).  To meet this burden the plaintiff is "obliged to plead *facts* that, viewed in the light most favorable to him, make out a violation of a constitutional right so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right."  *Id*. (emphasis in original).  In addition, the plaintiff's "allegations must demonstrate that each defendant officer, through his or her own individual actions, *personally* violated plaintiff's rights under clearly established law."  *Id*. (emphasis in original).

### 2.    Application

Under the first step of the qualified immunity analysis, it must be determined whether Boyd has pled facts showing that defendants violated one of his constitutional rights.  As noted above, Boyd's claims are for deliberate indifference in violation of the Eight Amendment.  To survive a motion to dismiss on a deliberate indifference claim, Boyd must have alleged facts to satisfy both the objective and subjective components as to each defendant.

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' "  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2002) (citing *Farmer*, 511 U.S. at 834).  In *Farmer*, the Supreme Court

held that the objective test requires that "the inmate show that he is incarcerated

under conditions posing a substantial risk of serious harm." 511 U.S. at 834; *see*

*also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under

"the subjective component, the plaintiff must allege facts which, if true, would

show that the official being sued subjectively perceived facts from which to infer

substantial risk to the prisoner, that he did in fact draw the inference, and that he

then disregarded that risk." *Comstock*, 273 F.3d at 702 (citing *Farmer*, 511 U.S. at

834).

As previously mentioned, in *Wilson*, the Sixth Circuit confronted a habeas

petition alleging deliberate indifference claims under the Eighth Amendment

regarding the COVID-19 response at the Federal Correctional Institution in Elkton,

Ohio (FCI Elkton). 961 F.3d 829. Due to the health risks of COVID-19 combined

with its transmissibility under standard prison conditions, the *Wilson* court found

that the objective prong of the deliberate indifference test was "easily satisfied."

*Id*. at 840. As for the subjective prong, the court found that while the defendants

were aware of and understood the potential risk of serious harm, they were not

deliberately indifferent to that risk. *Id*. The Sixth Circuit noted that prison

officials at FCI Elkton were:

> implement[ing] measures to screen inmates for the virus; isolat[ing]
> and quarantin[ing] inmates who may have contracted the virus;
> limit[ing] inmates' movement from their residential areas and
> otherwise limit[ing] group gatherings; conduct[ing] testing in

9

accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

*Id*. at 841.

The Sixth Circuit concluded that through these actions, the prison "had responded reasonably to the risk posed by COVID-19 and that the conditions at Elkton cannot be found to violate the Eighth Amendment." *Id*.

Here, while the harm imposed by COVID-19 on inmates at [FCI] Elkton "ultimately [is] not averted," the [Bureau of Prisons (BOP)] has "responded reasonably to the risk" and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights. *Farmer*, 511 U.S. at 844, 114 S. Ct. 1970. The BOP implemented a six-phase action plan to reduce the risk of COVID-19 spread at [FCI] Elkton. Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks. The BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injunction, but even there the BOP represented that it was on the cusp of expanding testing. The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

*Id*. The Sixth Circuit noted that its decision was in line with its previous decisions regarding responses to similar risks of harm, as well as sister circuits' conclusions regarding similar responses to COVID-19. *Id*.

10

Under *Wilson*, and as conceded by defendants, Boyd has satisfied the objective component of a deliberate indifference claim.  COVID-19 poses serious health risks, particularly to individuals like Boyd who are African American, older, and suffer from health conditions including hypertension.  *See also Mahan v. Nagy*, No. 2:22-cv-10489, 2022 WL 17480826, at *3 (E.D. Mich. Nov. 1, 2022) ("It is undisputed that the health risks associated with COVID-19, particularly within the first year of the pandemic, constituted a 'substantial risk of harm.' "), *report and recommendation adopted*, 2022 WL 17477138 (E.D. Mich. Dec. 6, 2022).

Defendants contend, however, that Boyd failed to plead facts satisfying the subjective component of a deliberate indifference claim.  In doing so, they rely on the Sixth Circuit's approval of the COVID-19 precautions in place at FCI Elkton and the similarly stringent polices in place in MDOC facilities, which have garnered approval from judges in this district.  *See, e.g.*, *Id*., at *5.  Ultimately, this argument misses the point.  Boyd is not alleging that the MDOC's COVID-19 precautions were inadequate; instead, he is alleging that defendants acted in contravention of MDOC policies when they placed him in the COVID-19 quarantine unit even though he told them that he had tested negative for the virus.

The Sixth Circuit has explained that the subjective prong

generally requires alleging at least that the defendant acted or failed to act despite his knowledge of a substantial risk of serious harm.  The

11

official must have a subjective state of mind more blameworthy than negligence, akin to criminal recklessness. As relevant here, the key inquiry is whether the defendants responded reasonably to the risk posed by COVID-19. And a response may be reasonable even if the harm imposed by COVID-19 on inmates ultimately is not averted.

*Dykes-Bey v. Washington*, No. 21-1260, 2021 WL 7540173, at *2 (6th Cir. Oct. 14, 2021) (cleaned up). Boyd's allegations satisfy the Sixth Circuit's pleading requirements under the subjective component.

Boyd alleges that he told Laird and Nyquist he had recently tested COVID-negative when they were transferring him to the quarantine unit. He also alleges that he told Klapish about his negative test results once he arrived in the quarantine unit. Defendants ignored Boyd and forced him to remain in the quarantine unit even though being around COVID-positive prisoners put Boyd at serious risk of contracting the virus. This risk was realized when Boyd tested positive for COVID-19 soon after leaving the quarantine unit. By placing Boyd in the quarantine unit and refusing to let him leave despite his verifiable test results, defendants failed to respond reasonably to the risk COVID-19 posed to him.

This determination is supported by the conclusions reached and rationales used by other courts. In *Hickman v. Washington*, No. 2:22-cv-232, 2023 WL 2782367, at *5 (W.D. Mich. Apr. 5, 2023), the district court permitted a case to proceed past the screening stage where the prisoner-plaintiff "contend[ed] [d]efendants ignored MDOC policies and protocols and failed to separate those

12

inmates who had tested positive for the virus from those who had tested negative. . . . [and] suggest[ed] that the intermingling of positive and negative inmates in G-Unit led to him contracting COVID-19 on October 10, 2020."  Moreover, the Sixth Circuit has suggested that allegations of COVID-negative prisoners and COVID-positive prisoners being housed together could help a prisoner-plaintiff satisfy the subjective component.  For example, the Sixth Circuit wrote that a prisoner-plaintiff's failure to allege that he "was placed in cells with prisoners who were positive with COVID-19 or was otherwise harmed by the defendants' alleged actions[,] proved 'fatal to his claim.' "  *Sanders v. Macauley*, No. 22-1502, 2022 WL 16729580, at *3 (6th Cir. Aug. 10, 2022).  Additionally, the Sixth Circuit criticized a prisoner-plaintiff's failure to "allege that the defendants knowingly housed COVID-19-positive inmates alongside [the] plaintiff, or even that a COVID-19 outbreak occurred in [the prison]."  *Dykes-Bey*, at *3.  Ultimately, Boyd's allegations that defendants forced him to stay in the quarantine unit after he informed them that he was COVID-negative (a fact that could have been verified by checking his test results), satisfies the subjective component for the purposes of defeating a motion to dismiss.

With the first part of the qualified immunity test met, the undersigned now turns to the second.  Defendants argue that Boyd "must cite a case in which a court has found that a prison employee responded to COVID-19 in a manner similar to

the [d]efendants, and where that response was held to be unconstitutional." (ECF

No. 46, PageID.535). This argument goes too far.

The Sixth Circuit has explained that "courts have frequently rejected

officials' contentions that a legal duty need be litigated and then established

disease by disease or injury by injury in the context of Eighth Amendment claims."

*Murray v. Dep't of Corr.*, 29 F.4th 779, 790 (6th Cir. 2022) (cleaned up); *see also*

*Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1097 (6th Cir. 2019) ("[T]he Supreme

Court 'does not require a case directly on point if existing precedent has placed the

statutory or constitutional question beyond debate.' " (quoting *Ashcroft v. al-Kidd*,

563 U.S. 731, 741 (2011))). While COVID-19 may have been novel, contagious

diseases have long been a part of everyday life, including in prisons. For example,

other courts "have held that inmates can state an Eighth Amendment claim for

confinement in a cell with an inmate who has a serious contagious disease that is

spread by airborne particles, such as tuberculosis." *Wright v. Hayden*, No.

5:08CV–179, 2009 WL 909562, at *2 (W.D. Ky. Mar. 31, 2009). Thus, a

prisoner's right to be housed separately from prisoners with contagious diseases

was clearly established at the time of events underlying this lawsuit. Accordingly,

Boyd has successfully met his burden of overcoming defendants' qualified

immunity defense at this stage.

14

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that

defendants' joint motion to dismiss, (ECF No. 46), be DENIED.  If this

recommendation is adopted, the case will continue against Laird, Nyquist, and

Klapish.

Dated: June 27, 2023                       s/Kimberly G. Altman
Detroit, Michigan                          KIMBERLY G. ALTMAN
                                           United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &

Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

15

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon
counsel of record and any unrepresented parties via the Court's ECF System to
their respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on June 27, 2023.


<u>s/Eddrey O. Butts</u>
EDDREY O. BUTTS
Case Manager